UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REGINALD WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-404** |
| **N. BURL CAIN, WARDEN** | **SECTION "G"(5)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **GRANTED**.

I. *Procedural history*

Petitioner, Reginald Williams, is a state prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. In August of 1980, Williams was convicted by a jury of first-degree murder for a crime he committed when he was seventeen (17) years old.[1] He was sentenced to mandatory life imprisonment without benefit of probation, parole or suspension

---

[1] State Rec., Vol. 1 of 3, Docket Master entry 9/12/80; *see also* Bill of Indictment, Orleans Parish Grand Jury.

of sentence.[2]  He unsuccessfully challenged the conviction and sentence on direct appeal and through post-conviction and *habeas* proceedings in the state and federal courts.[3]

On June 25, 2012, the United States Supreme Court, in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), held that a mandatory life sentence without parole for juvenile offenders for a crime committed when they were under 18 years old violates the Eighth Amendment's prohibition on "cruel and unusual" punishments.  Shortly after the *Miller* decision, Williams filed a motion to correct an illegal sentence in the state district court, arguing that his sentence was unconstitutional under *Miller*.[4]  The state district court granted the motion, finding that *Miller* applied retroactively, and amended Williams's sentence to remove the bar on parole eligibility.[5]  The Louisiana Fourth Circuit Court of Appeal denied the State's related writ

---

[2] *Id.*, Minute Entry (Sentencing), September 12, 1980; *see also* State Rec., Vol. 2 of 3, Statement of Facts.  Based on the law in effect at the time, Williams faced either a punishment of death or a mandatory term of life imprisonment without benefit of probation, parole or suspension of sentence for first-degree murder.  La. R.S. 14:30.  The jury was unable to reach a unanimous verdict as to the appropriate penalty and were divided 10-2 in favor of the death penalty.

[3] State Rec., Vol. 1 of 3, *State v. Williams*, KA-1143 (La. App. 4th Cir. May 10, 1984) (unpub. op.).  The various rulings are not pertinent to the issue presented herein and will not be discussed.

[4] State Rec., Vol. 1 of 3, Motion to Correct an Illegal Sentence, Orleans Parish District Court, No. 275-987 "I"(Keva Johnson) and Memorandum in Support.  The motion to correct an illegal sentence and various state-court rulings associated with that motion are also attached as exhibits to Williams's federal *habeas* application (Rec. Doc. 3).

[5] *Id.*, District Court Judgment signed October 5, 2012.

application challenging that judgment.[6] The Louisiana Supreme Court granted the State's writ application, finding that *Miller* did not apply retroactively based on its previous holding in *State v. Tate*, 12-2763 (La. 11/5/13), 130 So.3d 829, and reinstating Williams's sentence as originally imposed.[7]

On or about February 4, 2015, Williams filed the instant federal *habeas corpus* application seeking relief under *Miller*.[8] This Court thereafter granted Williams's unopposed motion to stay the matter in light of the grant of certiorari by the United States Supreme Court in *Montgomery v. Louisiana*, 135 S.Ct. 1546 (2015).[9] Following the Supreme Court's decision in *Montgomery*, 136 S.Ct. 718 (2016), Williams timely moved to lift the stay and for judgment granting relief.[10] The stay was lifted and the parties were given additional time for supplemental briefing in light of the newly issued *Montgomery* decision.[11]

---

[6] State Rec., Vol. 1 of 3, *State v. Williams*, 2012-K-1604 (La. App. 4th Cir. Jan. 7, 2013).

[7] State Rec., Vol. 3 of 3, *State v. Williams*, 2013-OK-0100 (La. 6/20/14), 141 So.3d 805 (Johnson, C.J., dissenting).

[8] Rec. Doc. 3, Petition. Williams was granted authorization to proceed with the instant federal application by the United States Fifth Circuit Court of Appeals (copy of prior Report and Recommendation in C.A. No. 97-1347 "LLM" and the Fifth Circuit's Order *In Re: Reginald Williams*, No. 14-31431 (5th Cir. Jan. 27, 2015) are attached as exhibits to the federal application at pp. 16-26, 57).

[9] Rec. Docs. 18, 21.

[10] Rec. Doc. 23.

[11] Rec. Doc. 24.

3

The State filed a response in which it concedes that the petition is neither untimely nor barred as second or successive. Shortly after filing that initial response to the petition, the State sought leave to file a supplemental brief in support of its position, which motion was granted.[12] The purpose of the supplemental brief was to bring to the Court's attention the recent decision in *Spiller v. MacLaren*,[13] a district court case from the Southern District of Michigan that the State suggests supports its central contention that the petition should be dismissed without prejudice because Williams failed to exhaust his claim in the state courts following the Supreme Court's decision in *Montgomery v. Louisiana*, *supra*.

II. *Exhaustion*

Citing comity concerns, the State argues that "when a right is made newly available in state courts, it is state courts that must first be asked to apply it."[14] With respect to Williams's application, the State contends, "Louisiana courts have had no opportunity to consider Williams's claim in the wake of *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), which compels them to view it in a fundamentally different light."[15] Therefore, the State submits that a federal court's grant of relief at this juncture would run afoul of "strict adherence to the doctrine of

---

[12] Rec. docs. 26, 27.

[13] No. 16-cv-11269, 2016 WL 1583840 (E.D. Mich. Apr. 20, 2016).

[14] Rec. doc. 25, p. 9.

[15] *Id*.

exhaustion" and thwart federal-state comity by removing the state court's opportunity to apply *Montgomery* and remedy a *Miller* violation in the first instance. The Court disagrees.

Generally, a state prisoner must exhaust available state remedies before filing a federal application for *habeas corpus* relief. 28 U.S.C. § 2254(b)(1); *see Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir.1997). A petitioner satisfies the exhaustion requirement if he presents the essential factual and legal bases of his federal claim to each appropriate state court, including the highest state court capable of reviewing it, in order to give state courts a full and fair "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotation marks and citation omitted). A federal claim has been "fairly present[ed] in each appropriate state court, including a state supreme court with powers of discretionary review," if it "alert[s] that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal parentheses and quotation marks omitted); *see also Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). The exhaustion requirement serves to promote comity between federal and state judicial systems. *See Coleman v. Thompson*; 501 U.S. 722, 731 (1991); *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir.2003). Indeed, the primary goal of the exhaustion doctrine is to prevent "unnecessary conflicts between courts equally bound to guard and protect rights secured by the Constitution." *Picard v. Connor*, 404 U.S. at 275 (quoting *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886)).

5

The State argues that Williams's claim is rendered unexhausted by *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), because that decision purportedly casts Williams's *Miller* claim in a fundamentally different light than existed at the time he initially exhausted the claim in the state courts. The State suggests alternatively that the federal petition be held in abeyance, should a stay be requested, to allow Williams to present his *Miller* claim again in state court for reevaluation in consideration of *Montgomery*. In support, the State urges application of a general principle and qualification to the general rule of exhaustion (*i.e.*, that typically once a federal claim has been fairly presented to the state courts it is *not* necessary to make repeated applications), namely that "[i]f a prisoner has exhausted his state remedy unsuccessfully, but there is an intervening Supreme Court decision that might induce the state courts to give relief, the petitioner will be required to apply again for relief from the state courts so that they may have the first opportunity to apply the new Supreme Court decision."[16] 17B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 4264.4 (3d ed. 2007) (citing *Picard v. Conner*, 404 U.S. 270, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)).

The United States Fifth Circuit has recognized this principle, noting that the United States Supreme Court has "intimated that perhaps an intervening change in federal law cast[ing a] legal issue in a fundamentally different light" might make necessary the re-exhaustion of state court remedies before seeking federal review. *Gomez v. Dretke*, 422 F.3d

---

[16] *See* Rec. Doc. 25, p. 9.

264, 266 (5th Cir. 2005) (citing *Picard v. Connor*, 404 U.S. at 276) (leaving open the question as to an intervening change in federal law because the facts in *Picard* did not present that situation) (citing *Blair v. California*, 340 F.2d 741, 744 (9th Cir.1965)). Notwithstanding that no mandate from the Supreme Court exists in this context, application of this general principle under the circumstances presented here does not require qualifying the general rule of exhaustion and forcing Williams back to the state courts to reassert his *Miller* claim.

Because the Louisiana Supreme Court had a fair opportunity in this case (1) to consider the claim that his mandatory life-without-parole sentence for first-degree murder was unconstitutional based on *Miller* and (2) to correct that asserted constitutional defect in his sentence, there is no need for the state district court to reassess a second motion to correct an illegal sentence. The state courts were already given the opportunity to consider and apply *Miller*. Williams properly raised the claim that *Miller* rendered his mandatory life-without-parole sentence unconstitutional and squarely presented that claim at every level of the Louisiana judicial system. The Louisiana Supreme Court, applying its own precedent, refused to give retroactive effect to *Miller*. There is no doubt that Williams fairly presented this issue at every state-court level, giving the state courts the first opportunity to rectify the asserted constitutional error, and that he obtained an adverse ruling in the state courts. The *Montgomery* decision merely removes any persisting doubt and confusion that the rule of law announced in *Miller* must be applied to mandatory life-without-parole sentences, like Williams's, that became final before *Miller* was decided. It simply is no longer debatable

7

whether *Miller* applies in this case – it does. In fact, the State does not argue that Williams is not entitled to relief based on *Miller*. Therefore, contrary to the State's argument that *Montgomery* constitutes an intervening change in federal law requiring the state courts to view Williams's claim in a "fundamentally different light," the Court finds that *Montgomery* itself was not an intervening change in federal law, but instead, merely clarified the application of *Miller* to mandatory life sentences such as Williams's.

As noted earlier, the State has also filed a supplemental brief that consists almost entirely of a reproduction of the aforementioned *Spiller* decision of the District Court for the Eastern District of Michigan. In that case, the court dismissed the petition without prejudice, finding that

> Petitioner fails to show that he has properly exhausted state court remedies as to his sentencing claim because he has to rely upon *Miller* and *Montgomery* in order to obtain collateral review of his sentencing claim — as well as any potential relief. Petitioner has not given the state courts the opportunity to review his sentencing claim in light of the Supreme Court's decision in *Montgomery*. Moreover, Petitioner has an available avenue for relief in the state court system such that his further pursuit of state court remedies would not be futile.[17]

There are two reasons this decision is unpersuasive here, both of which are evident in the above-quoted language. First, a review of the record in the *Spiller* case reveals that, unlike Williams in this case, while the petitioner in *Spiller* raised his *Miller* argument unsuccessfully

---

[17] *Spiller*, 2016 WL 1583840, at *2 (emphasis added).

whether *Miller* applies in this case – it does. In fact, the State does not argue that Williams is not entitled to relief based on *Miller*. Therefore, contrary to the State's argument that *Montgomery* constitutes an intervening change in federal law requiring the state courts to view Williams's claim in a "fundamentally different light," the Court finds that *Montgomery* itself was not an intervening change in federal law, but instead, merely clarified the application of *Miller* to mandatory life sentences such as Williams's.

As noted earlier, the State has also filed a supplemental brief that consists almost entirely of a reproduction of the aforementioned *Spiller* decision of the District Court for the Eastern District of Michigan. In that case, the court dismissed the petition without prejudice, finding that

> Petitioner fails to show that he has properly exhausted state court remedies as to his sentencing claim because he has to rely upon *Miller* and *Montgomery* in order to obtain collateral review of his sentencing claim — as well as any potential relief. Petitioner has not given the state courts the opportunity to review his sentencing claim in light of the Supreme Court's decision in *Montgomery*. Moreover, Petitioner has an available avenue for relief in the state court system such that his further pursuit of state court remedies would not be futile.[17]

There are two reasons this decision is unpersuasive here, both of which are evident in the above-quoted language. First, a review of the record in the *Spiller* case reveals that, unlike Williams in this case, while the petitioner in *Spiller* raised his *Miller* argument unsuccessfully

---

[17] *Spiller*, 2016 WL 1583840, at *2 (emphasis added).

in the state trial court, he did not appeal the trial court's denial of that request for relief before the Michigan state appellate courts because an intervening decision of the Michigan Supreme Court had found in *People v. Carp*[18] that *Miller* was not to be applied retroactively. Accordingly, Spiller's petition explained that an appeal of the trial court's denial of his motion for relief from judgment under *Miller* would have been "a 'futile' remedy." The *Spiller* case was therefore in a much different posture than the present case, in which Williams indisputably exhausted his claim that his mandatory life-without-parole sentence for first-degree murder was unconstitutional based on *Miller.*

The second reason that the *Spiller* decision is unpersuasive here is that, as stated by that court, Spiller had an "available avenue for relief in the state court system such that his further pursuit of state court remedies would not be futile." The remedy referred to here was a statute that the state of Michigan had enacted "anticipating that the United States Supreme Court might rule that Miller applies retroactively" that instituted a statutory procedure for resentencing juvenile offenders, like Spiller and Williams, who were given mandatory non-parolable life sentences.[19] Recognizing that this remedy was not only available but mandatory, the *Spiller* Court ordered that should the state of Michigan fail to conduct the

---

[18] 496 Mich. 440 (Mich. 2014); *cert. granted, judgment vacated* by *Davis v. Michigan*, 136 S.Ct. 1356 (2016).

[19] Mich. Comp. Laws § 769.25a.

9

rehearing as required by statute, the federal *habeas* case could be re-opened.[20] The State of Louisiana has no similar re-sentencing requirement.

Finally, it is worth noting here that at least two judges of this district have recently granted *habeas* petitions under circumstances similar to those present here; one of those decisions rejected the very same non-exhaustion argument being advanced by the State in this case.[21] These decisions are far more persuasive to this Court than is the distinguishable decision in *Spiller.*

For the reasons stated above and in light of the *Tate* and *Funchess* decisions, the Court simply does not believe principles of comity in this case dictate delaying a petitioner's immediate and presumably uncontested entitlement to relief from an unconstitutional sentence and requiring submission of what amounts to a repetitive and unnecessary motion to correct an illegal sentence for the state trial court's consideration. *See Hills v. Cain*, 11-490, 2012 WL 3524759, at *3 (M.D. La. July 5, 2012), *report and recommendation adopted*, 2012 WL 3524756 (Aug. 15, 2012). Having concluded that the sole federal claim raised herein (*i.e.,* that the mandatory life sentence without parole based on a crime committed when he was under 18 years of age is unconstitutional in light of *Miller*) was fairly presented to the state courts, the exhaustion requirement is satisfied. *See also Trevathan v. Cain*, 15-1009, 2016 WL

---

[20] *Spiller*, 2016 WL 1583840 at *2.

[21] *See Tate v. Cain*, 2016 WL 1598602 (Apr. 2016); *Funchess v. Prince*, 2016 WL 756530 (Feb. 2016).

1440794 (E.D. La. March 1, 2016), *report and recommendation adopted*, 2016 WL 1446150 (Apr. 11, 2016); *Wilson v Cain*, 12-CV-0310, 2016 WL 1417808, at *4 (W.D. La. Feb. 4, 2016), *report and recommendation adopted*, 2016 WL 1441648 (Apr. 8, 2016).

III. *Merits*

In *Miller v. Alabama*, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Miller*, 132 S.Ct. at 2469 (citation omitted).

In *Montgomery v. Louisiana*, the Supreme Court held that *Miller* is in fact retroactive. The Court reasoned:

> *Miller*, then, did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." *Id.*, at ––––, 132 S.Ct., at 2465. Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects " 'unfortunate yet transient immaturity.' " *Id.*, at ––––, 132 S.Ct., at 2469 (quoting *Roper*, 543 U.S., at 573, 125 S.Ct. 1183). Because *Miller* determined that sentencing a child to life without parole is excessive for all but " 'the rare juvenile offender whose crime reflects irreparable corruption,' " 567 U.S., at ––––, 132 S.Ct., at 2469 (quoting *Roper*, *supra*, at 573, 125 S.Ct. 1183), it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. *Penry*, 492 U.S., at 330, 109 S.Ct. 2934. As a result, *Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive because it " 'necessarily carr[ies] a significant risk that a defendant' "—here, the vast majority of juvenile offenders—" 'faces a punishment that the

> law cannot impose upon him.'" *Schriro*, 542 U.S., at 352, 124 S.Ct. 2519 (quoting *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).

*Montgomery v. Louisiana*, 136 S.Ct. at 734. The Supreme Court concluded:

> The Court now holds that *Miller* announced a substantive rule of constitutional law. The conclusion that *Miller* states a substantive rule comports with the principles that informed *Teague*. *Teague* sought to balance the important goals of finality and comity with the liberty interests of those imprisoned pursuant to rules later deemed unconstitutional. *Miller's* conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution.

*Id*. at 736.

In the instant case, it is not disputed that Williams was under the age of 18 when he committed the crime at issue for which he received a mandatory sentence of life imprisonment without the possibility of parole — a sentence that has been declared unconstitutional by the United States Supreme Court in an opinion announcing a new substantive rule of law that applies to Williams. The state courts denied Williams relief under *Miller* based on a conclusion that *Miller* has no retroactive effect to cases on collateral review — a conclusion that is in direct conflict with the United States Supreme Court's holding in *Montgomery*. For these reasons, the Court finds that Williams is entitled to federal *habeas corpus* relief.

This Court has considerable discretion in determining relief that will in fact promote and foster federal-state comity. In the context of conditional grants of *habeas* relief, it has been noted:

> The Supreme Court has consistently interpreted § 2243's mandate as vesting

12

> district courts with "broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). Indeed, in interpreting the similarly-worded predecessor to § 2243, the Court explained that the habeas statute endows district courts " 'with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus.' " *Id.* (quoting *In re Bonner*, 151 U.S. 242, 261, 14 S.Ct. 323, 38 L.Ed. 149 (1894)).

*Woodfox v. Cain*, 805 F.3d 639, 650 (5th Cir. 2015) (Dennis, J., dissenting). "District courts rightly favor conditional grants, which provide states with an opportunity to cure their constitutional errors, out of a proper concern for comity among the co-equal sovereigns." *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir.2006). Unlike an unconditional writ that ends a case and therefore may frustrate "AEDPA's goal of promoting comity, finality and federalism by giving state courts the first opportunity to review [the] claim and to correct any constitutional violation in the first instance," *Jimenez v. Quarterman*, 555 U.S. 113, 121, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009) (quoting *Carey v. Saffold*, 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)), a conditional writ allows the State "an opportunity to correct the constitutional violation found by the [federal] court" in its own courts. *See Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *see also Woodfox v. Cain*, 805 F.3d at 645.

Accordingly, the undersigned finds that Williams is entitled to be resentenced in conformity with *Miller* and that the state courts, in the first instance, are entitled to determine the appropriate sentence. *Cf. Hills v. Cain*, Civ. Action No. 11-0490, 2012 WL 3524759, at *3 (M.D. La. July 5, 2012) (making an analogous finding with respect to a sentence determined

13

to be unconstitutional under *Graham v. Florida*, 560 U.S. 48 (2010), *adopted*, 2012 WL 3524756 (M.D. La. Aug. 15, 2012).

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Williams's application for federal *habeas corpus* relief be **GRANTED** and that the state trial court be ordered to resentence him in conformity with *Miller v. Alabama*, 132 S.Ct. 2455 (2012), within one-hundred twenty (120) days from entry of judgment or release him from confinement.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[22]

New Orleans, Louisiana, this 29th day of April, 2016.

                                            MICHAEL B. NORTH
                                     UNITED STATES MAGISTRATE JUDGE

---

[22] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.